Good morning. May it please the Court, my name is Kenneth Berman and I represent Visionaid. Mount Vernon's panel counsel in the Gary Sullivan suit has a non-waivable conflict of interest because he represents two clients, Mount Vernon and Visionaid, who have incompatible settlement objectives. The conflict exists regardless of any common interest that Mount Vernon and Visionaid might share. After Sullivan sued Visionaid for wrongful termination, a claim that Mount Vernon is obligated to defend under the insurance policy, the first lawyer that Mount Vernon hired to defend Visionaid threatened a countersuit against Sullivan for misappropriation of company funds. In response to that threat, Sullivan dropped his settlement demand from $400,000 to zero, but only if Visionaid would release Sullivan from the threatened counterclaim. If Visionaid had agreed to that, Mount Vernon would have been ecstatic because that would have ended Mount Vernon's obligation to defend the Sullivan suit. Mount Vernon would not have had to pay a dime to Sullivan, but Visionaid would have had to pay a big price for that and Visionaid would have had to let Sullivan keep all the money that he misappropriated. Sullivan's settlement demand proves the conflict of interest between Mount Vernon and Visionaid because such a settlement would favor Mount Vernon but disadvantage Visionaid. The conflict exists because panel counsel is in a position to shape how the case is developed, which can further Mount Vernon's settlement objectives to Visionaid's detriment. When it became apparent to Visionaid that there was a conflict, Mount Vernon's first panel counsel withdrew from representing Visionaid because Visionaid would not sign a conflict waiver. The second panel counsel that Mount Vernon hired told Mount Vernon that he might be forced to file Visionaid's counterclaim, but he would not have to acknowledge its validity as a defense. When it came time to file the answer, that panel counsel didn't want to have anything to do with the counterclaim, so Visionaid had to hire its own lawyer to draft and sign the portion of the answer that pleaded the counterclaim. Under Massachusetts law, a lawyer hired by an insurer to defend the insured represents both the insurer and the insured and owes a duty of loyalty to both. If the interests of the two are in conflict, the insured is entitled to pick the defense lawyer, but the insurer is still obligated to pay for the representation. Mount Vernon argues that there's no conflict because of the common interest that Visionaid and Mount Vernon have in using the counterclaim to defeat Sullivan's claim or negotiate a favorable settlement. But the presence of a common interest does not erase a conflict of interest, and Mount Vernon and Visionaid have a conflicting interest in the counterclaim's full development. If Mount Vernon saw benefit to itself in the full development of the counterclaim, then Mount Vernon would be funding the prosecution of the counterclaim and would not be suing for a declaration that it has no obligation to fund it, and it wouldn't be instructing its panel counsel not to touch it. Can I ask a question, just so I get an understanding of the scope of your argument? In this case, you're arguing that the counterclaim happens to be inextricably intertwined with the claim that you're defending on. That's correct. Okay. If it wasn't, the conflict in theory could exist just as easily. It could in theory exist just as easily. In fact, nothing about the argument for the conflict is dependent on the fact that the counterclaim is inextricably linked. That's correct. Okay, so put aside the inextricably intertwined issue for a moment. Are you arguing that because of the conflict and because of the in-for-one, in-for-all rule, Mount Vernon has a duty to defend the counterclaim? Because of the conflict, you get to choose the lawyer, and Mount Vernon would have to pay for the cost of the counterclaim even if the counterclaim was not inextricably intertwined with the defense? It would depend. If the counterclaim is compulsory, they would have to pay for that. Even if it was not in any way inextricably intertwined with the defense? In other words, it was a compulsory counterclaim, but just a different claim? Because the conflict issue would still arise because we had the economic incentives were off, just as you're suggesting. Like a suit on a promissory note, for example? Exactly. Then Mount Vernon would not have to pay for the portion. In fact, Mount Vernon would be able to say, that's a non-compulsory counterclaim. Well, no, but I want it to be a, you can have a compulsory counterclaim. I assume there could be a compulsory counterclaim that is not inextricably intertwined with the defense. I'm having a tough time envisioning what that could be. Well, I have the same set of facts. It could be very, very similar for litigation management purposes. It would make perfect sense to include the claim. Right. But in terms of whether it's integral to the defense to prosecute it, it might not be at all. If it were a compulsory counterclaim, but not inextricably intertwined, Mount Vernon would have to pay for it. Would have to pay? Would have to pay. Can you win if we disagreed with that? Can I win on which issue? Can you win on getting them to pay for your lawyer in this case? Yes, because the counterclaim is inextricably intertwined with the defense. So why is the, where is the inextricably intertwined that phrase? What is it doing? Is it a construction of the defense cost provision of the contract? Well, the defense costs, in part it is. But by definition, if something is inextricably intertwined, it's intertwined. You can't separate it out because it's inextricably intertwined. But what makes that something they have to claim and a counterclaim you're prosecuting, conventionally speaking, is not defending against the claim. So the inextricably intertwined is doing what? Is that construing results from the defense? Well, there are several ways that we get there. One is the definition of defense costs and the insurance policy. Mount Vernon is offering a narrow definition of defense costs. The defense costs are only what is necessary to prove the denials in the answer or the affirmative defenses. And by the way, one of the affirmative defenses in the underlying suit is that Sullivan's claim is barred by virtue of the matters of the counterclaim. But they say that defense costs only means supporting the denials or approving the affirmative defenses. Whereas we say that defense costs cover the cost of anything that a defense attorney would be hired to do in the service of the defendant in the litigation. So if you have a compulsory counterclaim, if you have a counterclaim that is intertwined with a defense, if you have a counterclaim that will help the defense, then in the natural order of things, the defense counsel would be expected to assert that, then yes, that comes within defense costs. However, if it's a counterclaim that, for example, is completely unrelated, for example, a suit on a promissory note, the insurance company can say, listen, I know you have that suit against him for a promissory note. It doesn't have anything at all to do with his wrongful termination claim. We're not covering it. It's not compulsory. It's not going in there. If you want to bring that lawsuit, you do that on your own. We're going to be providing a lawyer for you to handle everything that the defense counsel would ordinarily be expected to do, which would include the compulsory counterclaims, would include intertwined counterclaims, and would include counterclaims that have such a nexus to the complaint that it would be logical to assert them in the complaint. Now, if Mount Vernon's interests and VisionAid's were not in conflict, Mount Vernon would not be arguing to this court, as it does in its brief, that the counterclaim is tangential and entirely irrelevant to VisionAid's defense. That's something we would expect Gary Sullivan to argue, not something coming out of the mouth of the insurance company that's supposed to be protecting VisionAid from Sullivan's claim. On one hand, Mount Vernon is glad that there's a counterclaim, because how effective it's been in getting Sullivan to propose a wash as a settlement. But the counterclaim also stands as an impediment to settlement. Well, I don't totally follow that. Sullivan, I would think, would have an interest in saying that to prove that there's no discrimination, you'd have to go so far as to prove misappropriation. Whereas I think you would be saying, to prove there's no discrimination, we don't have to prove there's no misappropriation. In fact, that's probably what you'd say to the judge. You'd say, we don't have to prove no misappropriation. All we have to prove is that we had a reasonable belief he was a misappropriator. We had some non-discriminatory reason. You might want to prove he was a misappropriator. We do want to. But your legal position in defending it would be you absolutely do not have to prove that. No, I would agree that if we're in the Sullivan suit, we're not going to be arguing for a higher burden of proof. However, we would want to prove that Sullivan was a misappropriator, because if we prove the misappropriation, we win. Then the issue of pretext goes away. But does that mean it's inextricably intertwined? I'm trying to figure out what the test of that is. As a legal matter, they're not inextricably intertwined. Oh, I would say that they are inextricably intertwined, because the reason that he was terminated was because of the misappropriation. Because of the belief of it. Because he misappropriated. Because of the belief of it, I would have thought. Well, we had evidence that he misappropriated. Which led to your belief of it. Of course. Yes, of course. That's the legal test. That's why I'm trying to get past it. Since that's the test, you want us to read inextricably intertwined to mean? If we show that we had a belief in a legitimate reason for terminating, then the burden shifts to Sullivan to prove that that was just a pretext. So all it does is shift the burden of proof. Once he proves that that's a pretext, which he could do, let's say, by saying that there were other people in the company who weren't terminated and there were similar circumstances affecting them, then the burden shifts to us to show that it's not a pretext. And on that, if all we do is say to the jury, well, we believed it, but we don't have any evidence to back it up, then the jury, it's much more easy for the jury to find that that was pretext. You would put forward evidence, but you wouldn't necessarily have to go through the proving out that he misappropriated. Well, it would be folly not to prove it out. It may even be malpractice not to prove it out. Because if you have the evidence, you are going to want the jury to believe that Mr. Sullivan misappropriated because the jury is not going to find in favor of the misappropriator. They're going to find in favor of the victim. And also, under the McKinnon rule, if we prove that he actually misappropriated, then his remedies for wrongful discharge or for discriminatory termination end as of the time that the employer learned of the misappropriation. He won't get any front pay from that point. He won't get reinstatement. He won't get back pay. His remedies end at the moment that we discover that he actually misappropriated. So in order to invoke the McKinnon rule, we actually have to prove that he was a wrongdoer, not just simply that we believed that he was a wrongdoer. We actually have to prove the underlying grounds. In deposition, Mount Vernon's Rule 30b-6 designee admitted that the counterclaim stands as an expense for Mount Vernon to settle the case if the counterclaim is in the case. Now, if VisionAid releases the counterclaim, VisionAid would be making an economic contribution to settle an insured claim. But Mount Vernon, not VisionAid, should be funding the settlement of any claims. So to get VisionAid's release, Mount Vernon would need to compensate VisionAid for the value of the counterclaim. That's why it's in Mount Vernon's interest to reduce the value, not eliminate the value, but to reduce the value of the counterclaim. So the lowest point that would be sufficient to persuade Sullivan to drop his claim in exchange for VisionAid's release, well, it's in VisionAid's interest to develop the counterclaim to its full value. Let's look at it this way. Sullivan has already come down to zero and the case still hasn't settled. Mount Vernon knows that for a $500,000 payment to VisionAid, Mount Vernon can pick up VisionAid's release and the Sullivan suit would be over. But Mount Vernon must therefore believe that in the process of litigating with Sullivan, Mount Vernon will be able to get the case to come to an end for less than $500,000. And the only way that Mount Vernon can buy that release from VisionAid for less than $500,000 is if the value of the counterclaim were cut down, not all the way to zero, because then Sullivan would have no reason to drop his claim, but to some value lower than $500,000. Now, Mount Vernon acknowledges that an insured has a right to select its own defense counsel and independent counsel when an insured defends under a reservation of rights. The reason that the insured has that right in a reservation of rights situation is because when panel counsel is defending on the insured's behalf, the panel counsel is in a position to shape the case to the insurer's advantage. And it's that case-shaping power, the ability to influence the outcome by choosing which defenses to build up and which ones to underplay, that's why when there's a conflict of interest between the insured and the insurer, the insured gets to control the defense through independent counsel selected by the insured. Now that leads to the next question. Whose responsibility is it to pay for prosecuting the counterclaim? After Mount Vernon's panel counsel used the threat of the counterclaim to drive down Sullivan's demand to zero, plus the VisionAid release, Mount Vernon walked away from the very counterclaim that its panel counsel threatened to bring. In its brief, Mount Vernon takes the position that the counterclaim is only tangential and entirely irrelevant to the defense. But that's not so for the reasons that I have already articulated. Mount Vernon also knows that it's not tangential or irrelevant because its Rule 30b-6 designee admitted in deposition that if VisionAid wins the counterclaim, he couldn't see how Sullivan could win his suit. Now look at what would happen if Mount Vernon were correct that it has no duty to prosecute the counterclaim. VisionAid would bear the cost of prosecuting the counterclaim. Essentially, VisionAid would be paying for developing the evidence that would prove out VisionAid's strongest defense, a defense that Mount Vernon is contractually obligated to provide. VisionAid would have two lawyers on the courtroom stage, one paid for by VisionAid, one by Mount Vernon, with no clear demarcation possible as to who does what and with no guarantee even that the trial judge would allow that. And if these two lawyers couldn't agree on how to litigate the case, the defense would be uncoordinated and dysfunctional. And that's why the end-for-one, end-for-all rule says that an insurance company has to deliver claims even that are outside the scope of the policy because we don't want the insurer to have a dysfunctional and a non-coordinated defense. I see that my time is up, but if the Court has any other questions, I'd be happy to answer them. Thank you. May it please the Court. My name is James Duane, and with Scarlett Rajbanshi, my co-counsel, we represent Mount Vernon Fire Insurance Company in this matter. I urge the Court to start with the policy language here. Mount Vernon's Employer's Liability Policy provides coverage to VisionAid for claims made against VisionAid. It covers only those claims first made against VisionAid during the policy period. Defense costs, which VisionAid has also taken issue with, means reasonable and necessary legal fees and expenses incurred by the company or by any attorney designated by the company to defend the insured resulting from the defense of any claim. Claims are similarly defined. Nowhere in the policy does it say that Mount Vernon has the obligation to prosecute claims on behalf of the insured. As the Town Realty Court said... Why doesn't the language resulting from the defense include the obligation to pay for the prosecutions of those claims that are A, compulsory counterclaims that must be brought, and B, compulsory counterclaims that are inextricably intertwined with the defense? Why wouldn't that be just a quite natural construction of results from the defense? And there are some courts that have held that, Your Honor. So what's wrong with that? The courts that have held that are in cases where the counterclaim would be a complete defense to the claim that has been brought by the underlying plaintiff. For example, third-party or cross-claims for indemnification or counterclaims for invalid trademark in cases where the underlying claim is trademark infringement. And your position is they could still be liable for AIDS discrimination even if they proved he was a misappropriator? They could be, Your Honor. And the theory would be what? That they actually recognized he was stealing from them, but thought that wasn't a good reason to fire him. It's because he's old? No, Your Honor. They may have made the decision to fire him before they discovered that he was misrepresenting. I'm not saying that it would happen, but I'm saying that the counterclaim is not necessary to defeat the claim for AIDS... And you want us to look at that as an abstract legal matter, whether the claim in principle is a complete defense, even if in practice it would be that doesn't matter? I'm sorry, Your Honor, I didn't... Well, you seem to be treating it as a legal matter. It is true that proving someone is a misappropriator is not, as a legal matter, a complete defense to the claim that you discriminated against them. But in practice, it seems like a pretty good defense. And you want us to say, I guess, for purposes of applying the inextricably intertwined test, we only look at the legal abstraction. We don't look at how it would play out in the particular case. Is that right? That's right, Your Honor. That's how appellate courts around the country appear to have handled it. I might add, Your Honor, that... Well, why are they... That may be the way they appear to handle it, but why is that a good way to handle it? Why not have a real world answer as opposed to a legal abstraction? Because then, Your Honor, I think you have to go back to the policy language. If the policy language included defense of claims includes bringing inextricably or some other language counterclaims that would defeat or assist in some way the defense of the case, that would be a different story. But that's not what the policy language says. But why isn't this the best defense? And why... The way you're looking at the counterclaim is very narrowly. Yes, there's an alternative theory of proving that there was not pretext, that there was good faith basis because they legitimately believed he may have been stealing. But why isn't actual proof of misappropriation, which is the same evidence you would put in if it were, in fact, a counterclaim, why is that not the best defense possible? The proof of misappropriation would go to the counterclaim. And to the defense. Well, the proof of a reasonable suspicion of misappropriation, in addition to which... That's one. You can plead in the alternative. You can say there was a reasonable suspicion, one, but also there was absolute... The fact that there was, in fact, theft bolsters the claim that there was a reasonable suspicion. And often that happens in lawsuits, Your Honor. I don't disagree. And defense attorneys don't parse. That's the whole point. A zealous defense attorney is going to bring the best game in defense of the claimant. Always, Your Honor. Always. Don't forget that there were two other grounds for Mr. Sullivan's dismissal. There was poor performance and there was also insubordination. Suppose, for example, at the time that Vision Aid had the report... Doesn't that weaken your case? I mean, suppose they indicate, or the defense says, it wasn't poor performance, I performed just as well as anyone else. No, I wasn't subordinate. I talked back just as much as anyone else talked back. But then you're left with the money piece. And if you can prove the misappropriation, which once again is the same evidence you would prove, in prosecuting a counterclaim, once again you're pulling apart the best defense in a way that doesn't support the notion of zealously representing the client. There's a conflict with how you're analyzing the defense. Let me pose a hypothetical, not maybe a direct answer to your question. I agree with you that it would not hurt the defense at all, and it could very well help. But suppose that in 2011, when Vision Aid got notice of the report that said that there were some questionable transactions and that they suspected, strongly suspected apparently, that Sullivan was stealing money. If at that point Vision Aid had brought suit against Sullivan for misappropriation and terminated him, Mount Vernon wouldn't be required to pay for that offensive suit. The decision of whether or not they should pay shouldn't depend on the timing just because it's a counterclaim in a suit that was brought by Sullivan. It would make no sense. In other words, why would they pay for an offensive claim that was brought before the discrimination claim? Does that go to Judge Souter's point? You want us to apply hypothetical, legal hypotheticals here as opposed to looking at the case that's before us, looking at the policy, and then applying real-life solutions to the facts as demonstrated by the policy? I understand Your Honor's point. But suppose that Mr. Sullivan had decided to leave his case in the MCAD where a counterclaim could not be brought, Vision Aid again would have to bring its own separate action for misappropriation. I'm sorry, Your Honor, go ahead. That's not what we have. I agree, Your Honor. But I'm just trying to figure out how it would work on the rule you want. Assume the conflict argument is a good one. I know you may disagree with that. Or even just assume the in-for-one, in-for-all applies to a compulsory counterclaim, which has some force because of the litigation management. On your argument, if in-for-one, in-for-all applies, and let's say even you're right about the conflict. There's no conflict. So Mount Vernon now has to prosecute the whole defense. You can't get two lawyers because in-for-one, in-for-all we say goes against that. There's going to have to be an allocation of costs then. That's right, Your Honor. And in the real world, how would one allocate the costs in light of the practical overlap between the argument that everything that one could make about the misappropriation argument would be the best defense also of the age discrimination? So even if you won on all those points, as long as one in-for-one, in-for-all applies, we're still going to have to get to what's a reasonable allocation. And on that score, it would seem like there's a fairly strong argument that the most reasonable allocation is it's all one piece here. So just by that route, I think you get to the same result as if we try and do it through the contract language. What's wrong with that? One thing that would not fit within Your Honor's question would be, for example, damages. Damages would not be part of the defense. Damages of misappropriation would not be part of the defense. While liability issues might be similar, although not exactly the same as we've discussed in our brief, there would be certainly, once you got beyond showing that there was a legitimate reason for Mr. Sullivan's termination. But that might be true even if we did it under the contract. In other words, even on, and that's a point not raised in the brief, but even under the inextricably intertwined test that they say, you might say that the damages portion of the attorney's time that's spent on the proving out damages for misappropriation is not a necessary and reasonable expense as part of the defense of the age discrimination claim. So under the contract, maybe you have an argument that you don't have to pay for that. But on the main argument you're making, which is that you don't have to do any of this, pay for any of it, I don't quite follow, unless it's true that you can have separate lawyers. You can have separate lawyers, one paid for by Mount Vernon, one paid for by the judge. But I'm saying if we disagreed with that, we thought there's got to be one lawyer for this case. I don't quite see how even under a reasonable allocation rule, it would make sense to parse it out such that the time spent trying to prove out misappropriation is not understood as part of the same cost as proving out the non-discrimination. And that cost might well fall on Mount Vernon, because the first case to go would likely be the discrimination case. I'm not saying Mount Vernon shouldn't pay for defending the case fully and properly, and they are, and they continue to be. And the two lawyers did work together, Your Honor. VisionAid's attorney drafted the counterclaim. The attorney appointed by Mount Vernon to represent VisionAid drafted the answer, and they filed it. And the case has been stayed pending the outcome of this case. So, in the real world, the trial judge is not necessarily going to let two attorneys prosecute one case? At trial? At trial. I agree, Your Honor. And then it's up to, if the trial judge does not allow that, it's up to the client, and that's VisionAid, which attorney conducts the defense at trial. No question about that. And then we're still fighting over which portion of the defense cost should go to you and which portion should go to them. That doesn't solve the problem. Or come to an agreement on that, Your Honor, for the benefit of the client, which the insurer has an obligation to do, and which I presume that the client would want also. They would want the best defense possible. And Mount Vernon has no interest in not providing the best defense possible, because it could result in a very costly verdict for them. No, but the best defense possible is the defense in which the claim of reasonable basis to discharge on reasonable suspicion of misappropriation is confirmed by proof of massive misappropriation. If there is a proof of massive disappropriation, then the possibility of settling fast, which is in Mount Vernon's interest, is going to require the sacrifice of a potentially massive recovery on the part of the insured. And therein is the inescapable conflict, it seems to me. Except, Your Honor, that VisionAid has the right to consent to settlement. And this could have been settled by an exchange of releases at one point, but VisionAid didn't consent, and so it wasn't. And so the panel lawyer who wants to stay on the good side of the company that puts him in the panel is still going to find it in his interest and in the company's interest to prove less misappropriation rather than more, because that makes it more likely that in fact the insured will throw in its potential recovery to get everything settled and over with. So once again, the conflict is inescapable. That would be a very, very fine calculation on the part of defense counsel. And defense counsel should and does have VisionAid's interest at heart in pursuing the best possible defense of the case. If that happens to result in a large recovery or help to result in a large recovery for VisionAid, so much the better. But I think Your Honor's question assumes that for some reason defense counsel appointed by Mount Vernon is not going to do a good job or is going to hold back. Yeah, but if that argument is sound, then it's an argument that can be made in any situation in which there is a conflict of interest, because it's an argument saying, never mind the conflict of interest, the lawyer will do the right thing. And that is not an admissible answer to a conflict situation. Well VisionAid has its own lawyer involved in the case, and I'm assuming that VisionAid's lawyer wouldn't allow that to happen. And then we have, as has been mentioned in the course of the argument, then your brother brought it up. Then you have the situation in which the conflicting interests of the two lawyers is sort of a threat to chaos in the trial. But that is only a hypothetical, Your Honor. There are ways of dealing with it, and it does happen all the time. And the courts that have addressed this issue, that we cite at pages 20 to 23, deal with that very issue and say that the insurer is not obligated to prosecute a counterclaim in situations just like this one. Just so I understand what you're saying, you're not contending that, in fact, if the parties couldn't reach an agreement, the judge at trial might not say, look, there's only going to be one lawyer. That's fine. You want it to be that all the negotiations that occur and whatever the trial judge does below is done on the understanding that Mount Vernon had no duty to defend the counterclaim and that Mount Vernon has no duty to pay anything for the counterclaim. And once everybody's clear on those legal rules, then go bargain, figure out, manage your trial as you wish. Exactly. And I would say not defend the counterclaim, but prosecute the counterclaim, Your Honor. But that's a fair statement. My time is up. Thank you very much.